**Florita Dakanay CAMPBELL, Plaintiff,**

v.

**P. A. ESPERDY, as District Director of the Immigration and Naturalization Service, for the District of New York, Defendant.**

**68 Civ. 805.**

United States District Court
S. D. New York.
July 24, 1968.

M. Ronald Gould, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, for the United States of America; by Francis J. Lyons, New York City, of counsel.

## OPINION

POLLACK, District Judge.

This suit seeks permanent residence status in the United States for the plaintiff, a Philippine national. The defendant is the District Director of the Immigration and Naturalization Service. The facts as claimed by the plaintiff and as assumed for the purposes of this mo-tion for summary judgment under Rule 56, F.R.Civ.P., by the defendant are as follows:

On July 28, 1964, plaintiff applied in Manila for an immigrant's visa to the United States and was placed on the waiting list with a priority as of that date. Before her immigrant's visa became available, and on July 17, 1965, plaintiff came to the United States from the Philippines as a non-immigrant visitor. Shortly after her arrival, on September 4, 1965, she married another Philippine national, a physician, Dr. James Campbell, who had entered the United States in 1964 as a non-immigrant exchange alien (one having a residence in a foreign country which he has no intention of abandoning). He had come to this country for the purpose of taking psychiatric residency at Grasslands Hospital, Valhalla, New York.

After the marriage, the plaintiff (through her husband) inquired from the Immigration Service how she could obtain an immigrant's visa to the United States, calling attention to the application therefor filed in Manila. She was advised by an employee of the Service that now, as the spouse of a non-immigrant exchange alien, she should and indeed was required to file an application to change her status from that of a visitor to that of a spouse of a non-immigrant exchange alien. She complied on October 20, 1965 and the change was effected on the records of the Immigration Service as of November 18, 1965 and so noted on her passport. By successive extensions, her exchange alien visa was extended to June 30, 1968 (also the latest expiry date of her husband's visa prior to the hearing of the present motion).

On January 20, 1966 the American Consul at Manila notified plaintiff that her application for an immigrant's visa had been reached on the waiting list and that she should prepare an appropriate final application therefor. She assembled the necessary documents and notified the Embassy that she had them ready. She was next advised that under

the law, as an exchange visitor, she was ineligible for the immigrant visa or for adjustment while in the United States to immigrant status. (8 U.S.C. §§ 1182 (e), 1255, 1258 and 8 C.F.R. § 245.-1(b)). She was further told that to regain eligibility and to obtain an immigrant visa, it would be necessary for her to leave the United States and then reside abroad for an aggregate of at least two years.

Plaintiff contends that there was no need for her to have changed her status from a visitor to an exchange alien; her marriage did not so require. Plaintiff further contends that had she continued her original status as a non-immigrant visitor, she would have been eligible for an immigrant's visa and her status could have been adjusted while she remained in the United States without any such two year absence abroad.

Prior to commencing this suit, the plaintiff called the facts to the defendant's attention by an application to the Service for retroactive change of nonimmigrant status from that of an exchange alien to that of a visitor. This application was denied on the ground that

"there are no provisions in the immigration laws or regulations permitting the resumption of a former non-immigrant status ab initio."

Claiming that her exchange alien status was the result of erroneous information, interpretation and advice by the Immigration Service, which misled her and which she followed to her detriment, the plaintiff sues here for the restoration of her visitor status in 1965, *nunc pro tunc* and the consequent cancellation of her exchange alien status. The plaintiff asserts that the act and instructions of the officer of the Service deprived her unfairly, improperly and mistakenly of an opportunity to adjust her status while remaining here to that of a lawful permanent resident.

The government's brief on this motion says that the material facts are not in dispute and that the matters set forth by the plaintiff are insufficient in law to entitle her to any relief in this action. In its statement under Rule 9(g) of the General Rules of this Court the defendant has not set out any facts with respect to the interpretation, advice and instructions alleged to have been received by the plaintiff from the Service, apparently on the notion that such facts are not material as a matter of law.

■ The plaintiff's opposing statement under Rule 9(g) of the General Rules of this Court recites as material facts which raise a genuine issue to be tried, the following:

"4. The officer told plaintiff's spouse that plaintiff was no longer eligible to receive the immigrant's visa, because of plaintiff's marriage to an exchange alien.

5. The officer informed plaintiff's spouse, that he must apply for a change of status on behalf of plaintiff, from that of a nonimmigrant visitor to that of the wife of an exchange alien.

6. Pursuant to those instructions, a change of status from a nonimmigrant visitor to the wife of an exchange alien was applied for and granted all to plaintiff's detriment."

■ Assuming, as we must on this motion in the absence of any denial from the government, the information, interpretation and instructions which plaintiff alleges, the questions remain whether these were erroneous and if so, what the legal significance of such error is.

The information allegedly supplied plaintiff's husband on her behalf was erroneous. Plaintiff's marriage did not *ipso facto* alter her status to that of an exchange alien. 8 C.F.R. § 214.2(j). Plaintiff was eligible to apply for lawful permanent resident status until March 16, 1966, the expiry date of her visitor's visa, absent her previous change of status to that of an exchange alien. 8 U.S.C. § 1255. Moreover, absent such a change, she was also eligible to apply for

a change to other non-immigrant classifications which could be converted into immigrant status upon an immigrant's visa becoming available. 8 U.S.C. § 1258. None of these other alternatives would have required her to reside outside of the United States for a period of two years following the termination of her exchange status in order to be admitted as an immigrant. 8 U.S.C. § 1182(e).

The legal effect of the error of the Service is to entitle the plaintiff to appropriate relief which this Court has jurisdiction to grant. 28 U.S.C. §§ 2201, 2202; 5 U.S.C. § 701 et seq.; Hom Sin v. Esperdy, 239 F.Supp. 903, 906–907 (S.D.N.Y.1965); Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L. Ed. 729 (1951).

In *Moser* a Swiss citizen having permanent residence in the United States was held entitled to have his application for citizenship considered, even though he had technically forfeited such right by being granted exemption from military service as a neutral alien. Waiver of the law in that case was deemed proper since plaintiff there had relied to his detriment upon misinformation supplied him by the government. The Court said:

"* * * because of the misleading circumstances of this case, he never had an opportunity to make an intelligent election between the diametrically opposed courses required as a matter of strict law. Considering all the circumstances of the case, we think that to bar petitioner, nothing less than an intelligent waiver is required by elementary fairness. * * * To hold otherwise would be to entrap petitioner." 341 U.S. at 47, 71 S.Ct. at 556.

The facts asserted by the plaintiff are not insufficient in law and if established would equitably entitle her to mitigating relief and consequently, the defendant's motion for summary judgment must be denied and the issues of fact tried.

So ordered.